[Cite as *Shelly Materials, Inc. v. Great Lakes Crushing, Ltd.*, 2013-Ohio-5654.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| SHELLY MATERIALS, INC., | : | **O P I N I O N** |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | |
| | | **CASE NO. 2013-P-0016** |
| - vs - | : | |
| GREAT LAKES CRUSHING, LTD., | : | |
| Defendant-Appellant/<br>Cross-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2012-CV-00207.

Judgment: Affirmed in part; reversed in part and remanded.

*Wm. Douglas Lowe*, Reese, Pyle, Drake & Meyer, P.L.L., 36 N. 2nd Street, P.O. Box 919, Newark, OH 43058-0919 (For Plaintiff-Appellee/Cross-Appellant).

*Justin M. Smith*, J.M. Smith Co., LPA, 24400 Highpoint Road, Suite 7, Beachwood, OH 44122 (For Defendant-Appellant/Cross-Appellee).

THOMAS R. WRIGHT, J.

{¶1} This case involves an appeal and cross-appeal from the final judgment in a civil action before the Portage County Court of Common Pleas. Following a one-day bench trial, the trial court found that appellee/cross-appellant, Shelly Materials, Inc., was entitled to prevail on its "account" claim because the evidence showed that it delivered concrete which appellant/cross-appellee, Great Lakes Crushing, LTD, employed in the

construction of a sidewalk.  In the appeal, Great Lakes Crushing contends that the trial court's factual findings were not supported by the evidence.  In the cross-appeal, Shelly Materials contends that the court erred as a matter of law in determining the percentage of post-judgment interest to be paid on the total award of damages.

{¶2} Shelly Materials is the parent corporation of the Medina Supply Company. The latter entity owns a number of cement plants throughout northeastern Ohio, which produce ready-mix concrete.  Medina Supply also owns a fleet of cement trucks used to transport the concrete from the plants to various construction sites in the area.

{¶3} As part of its delivery process, Medina Supply has a "ticket" system which is intended to provide verification that each load of concrete was delivered to the correct construction site.  Specifically, after a load has been emptied into his truck, the driver is given a ticket that states the name of the buyer of the concrete and the purchase order number.  The ticket also has two "boxes" that indicate where the particular load is to be delivered.  The first "location" box only provides a two-word description of where the site is.  The second such box, found near the bottom of the ticket, gives additional details as to the exact location of the construction, and thus is more informative for the driver.  In addition, the ticket contains a statement of the precise mixture of concrete carried in the truck.

{¶4} After arriving at the construction site, the driver is required to present the ticket to the purchaser's representative, usually the foreman, and obtain that person's signature before dumping the concrete.  As part of the transaction, the driver must give a copy of the signed ticket to the representative and return a second copy to the plant. Ultimately, the second copy is used by Medina Supply's billing department to produce

2

an invoice that is mailed to the purchaser in order to obtain payment for the concrete.

{¶5} In addition to its ticket system, Medina Supply has a GPS tracking system that enables the plant dispatcher to always know the present location of each truck sent to a particular construction site. If the size of a given job is such that it is necessary for the trucks to make multiple runs to the same site, the tracking system can be employed to coordinate the timing of the arrival of each truck so that the "flow" of the concrete is not interrupted.

{¶6} Great Lakes Crushing is a general contractor that specializes in "outside" construction work, including the recycling and installation of concrete. In March 2008, the entity's managing partner, Mark Belich, signed a credit application and a customer account agreement with Medina Supply. Under its "credit terms" provision, the account agreement stated that all invoices sent by Medina Supply must be paid within thirty days, and that financing charges of 18 percent per year would be imposed on any sum not paid in a timely manner. The agreement further stated that Great Lakes Crushing would be liable for any attorney fees Medina Supply incurred in collecting any amount owed pursuant to an invoice.

{¶7} Approximately two years later, Great Lakes Crushing was the successful bidder on a public works project at Kent State University in Portage County, Ohio. The project involved the installation of a new three-thousand-foot sidewalk beside Summit Street, for the purpose of connecting the main campus to a nearby maintenance area. As part of the paperwork for the project, Great Lakes Crushing was required to state the name of the entity that would be supplying the concrete for the sidewalk. In response, Great Lakes Crushing only referred to Medina Supply, and also indicated that the costs

of the concrete would be $40,000.

{¶8} When construction of the sidewalk began in September 2010, Kent State assigned its own construction manager, Todd Shaffer, to oversee the work. Although Shaffer was not always present while the work was going forward, he did check on the progress of the project on an almost daily basis. Furthermore, the university employed a separate company, Tinnerman-Adam, to test each load of concrete brought to the site to determine if the proper mixture was being used. Tinnerman-Adam then produced a report regarding the quality of the concrete.

{¶9} The new sidewalk was completely installed by December 2010, and Kent State subsequently paid Great Lakes Crushing as the general contractor on the project. But, when Shelly Materials requested payment of $39,657.85 for the concrete allegedly delivered by Medina Supply, Great Lakes Crushing refused to pay. Thus, in February 2012, Shelly Materials instituted the underlying action against Great Lakes Crushing, seeking recovery of the total sum owed, interest, and attorney fees. Under its first two claims, Shelly Materials essentially alleged that Great Lakes Crushing had violated the terms of their account agreement by failing to fully pay on its account within 30 days. In its third claim, Shelly Materials sought relief under the theory of unjust enrichment.

{¶10} Once the discovery process was concluded, the one-day bench trial went forward in January 2013. In trying to prove that Medina Supply provided the concrete which was used in the installation of the Summit Street sidewalk, Shelly Materials could not produce any written purchase order documenting Great Lakes Crushing's request for the concrete. As a result, Shelly Materials introduced into evidence copies of each ticket the truck drivers returned to the cement plant following the delivery of each load.

4

A review of those tickets shows that the majority of the signature lines for Great Lakes Crushing's representative was either blank or contained the initials "G.L.C." Although some of the tickets appear to have a signature in the appropriate space, none of them are legible.

{¶11} In conjunction with the tickets, Shelly Materials presented the testimony of 3 of the 18 drivers who supposedly delivered loads of concrete to the Summit Street sidewalk project. While acknowledging that they had been instructed by Medina Supply to obtain the signature of the job foreman on the ticket, all three drivers testified that it was not unusual for them to be unable to satisfy this requirement. According to them, the job site is extremely hectic when the concrete is being poured from the trucks, and the foreman simply does not have time to sign the tickets. The drivers further testified that they are often told to initial the ticket themselves, and then place the purchaser's copy of the ticket "under a rock" for safekeeping. As a separate point, two of the three drivers further stated that they were able to remember this particular project with Great Lakes Crushing because the job site had a pump that was being used to spread the concrete after a load was dumped from a truck.

{¶12} In addition to calling a plant dispatcher and a company controller, Shelly Materials presented the testimony of Todd Shaffer, the university construction manager. In regard to the pouring of the concrete for the sidewalk, Shaffer testified that, on those occasions when he was at the construction site, he only saw trucks from Medina Supply delivering the concrete. Shaffer further testified that the reports submitted by the tester of the concrete, Tinnerman-Adam, listed Medina Supply as the supplier of the concrete.

{¶13} Mark Belich, the managing partner of Great Lakes Crushing, testified on

5

both cross-examination for Shelly Materials and direct examination for his company. On cross-examination, he admitted that his company no longer had any of the paperwork for the Summit Street sidewalk project. He further admitted that he personally was only at the Summit Street job site once, and that was when his workers were planting trees by the new sidewalk. During his direct examination, Belich asserted that, contrary to the testimony of the Medina Supply drivers, a pump for the concrete was never used at that particular job. Second, he testified that the name of his corporation was similar to other construction companies in the area, and his corporation often received bills for supplies that other companies had ordered. Third, he stated that, although Medina Supply may have been approved to supply concrete for the sidewalk, another concrete supplier had also been approved by Kent State.

{¶14} In its final judgment, the trial court specifically found that Medina Supply had supplied all of the concrete that Great Lakes Crushing used to install the Summit Street sidewalk. Based upon this, the court held that Great Lakes Crushing was liable for the sum of $39,657.81, the reasonable value of the concrete. Moreover, pursuant to the terms of the account agreement, the trial court concluded that Great Lakes Crushing was required to pay Shelly Materials' attorney fees and 18 percent interest on the basic amount owed. As a result, judgment was entered against Great Lakes Crushing for the total sum of $77,793.34. Finally, the trial court ordered that the interest to be paid on the entire judgment would be at the statutory rate.

{¶15} As the appellant in the original appeal, Great Lakes Crushing asserts four assignments of error for review:

{¶16} "[1.] The trial court erred by finding that Defendant-Appellant entered into

6

a contract with Plaintiff-Appellee where there is no meeting of the minds, no agreement as to price and no reference, in what Plaintiff claims to be a contract, to a specific job that occurred more than two years later and no claim for breach of contract or contract terms are set forth in Plaintiff's Complaint.

{¶17} "[2.] The Plaintiff failed to produce sufficient evidence to support the Judgment and the decision of the Trial Court is against the manifest weight of the evidence when only three of the eighteen delivery drivers testified regarding ten of the fifty loads for which the Trial Court ordered Judgment for Plaintiff and the Trial Court made several errors in reviewing the evidence.

{¶18} "[3.] The trial court erred in finding breach of contract because the Plaintiff must prove the existence of a contract and its own performance before it can prove breach by Defendant.

{¶19} "[4.] The Trial Court abused its discretion in awarding attorney fees where there is no specific contract for the specific job allowing for attorney fees and, therefore, the Court should follow the American Rule with each party bearing its own litigation costs."

{¶20} Under each of its first three assignments, Great Lakes Crushing asserts an argument which is intended to show that Shelly Materials was not entitled to prevail in the underlying action because there was never any contract between it and Medina Supply for the delivery of concrete to the Summit Street job. Since the disposition of the second and third assignments will affect our analysis on the first assignment, those two will be addressed first.

{¶21} As noted above, the trial court's judgment in favor of Shelly Materials was

7

based upon the finding that Medina Supply was the actual supplier of the concrete that was used in the installation of the new sidewalk. Under its second assignment, Great Lakes Crushing argues that the trial court misinterpreted the evidence in making certain underlying findings of fact. Based upon this, the company further argues under its third assignment that the trial court erred in ultimately finding that the disputed sidewalk was built with concrete from Medina Supply.

{¶22} In challenging the trial court's underlying findings, Great Lakes Crushing primarily focuses upon the copies of the 50 delivery tickets introduced into evidence by Shelly Materials. Essentially, Great Lakes Crushing maintains that, to the extent that the tickets were submitted to prove that the concrete for the sidewalk came from Medina Supply, they were not entitled to any weight. First, the company notes that none of the tickets contained a legible signature establishing that one of its employees signed for each individual delivery. Second, the company emphasizes that only 3 of the 18 truck drivers who supposedly delivered the concrete were called by Shelly Materials to testify at trial.

{¶23} As to the lack of signatures, Shelly Materials was able to provide a logical explanation for the failure of the drivers to follow Medina Supply's policy on that point. Specifically, each of the three drivers-witnesses testified that, due to the chaotic nature of a construction site, it was not unusual to be unable to obtain the signature of the general contractor's representative. According to the drivers, the pouring of the concrete must occur very quickly; therefore, not only must a driver be prepared to "dump" his load immediately upon arriving at the job site, but he also must move his truck very quickly afterwards so that the next truck can come up and dump its load. In

relation to the fact that only three of the drivers were called to testify, Shelly Materials presented some evidence demonstrating that each of the other 15 drivers listed on the tickets were employees of Medina Supply when the Kent State sidewalk project was going forward. Thus, although calling the other drivers as witnesses may have justified affording the tickets greater evidential weight, the lack of the additional testimony only raised a question of weight; i.e., the 50 tickets and the accompanying testimony of the three drivers constituted some evidence supported the finding that Medina Supply delivered concrete to be used in the Summit Street sidewalk job.

{¶24} In addition to their testimony regarding the tickets, at least two of the truck drivers stated that they could recall going to the "sidewalk" job site because the Great Lakes Crushing workers were using a pump to spread the concrete. In challenging the credibility of the two drivers, Mark Belich testified that a pump could not have been present because he, as the managing partner, never would have approved the use of a pump at that particular job site. In light of this, Great Lakes Crushing submits that the drivers' testimony was simply incredulous, and that the trial court should have found that Medina Supply did not make any deliveries for the "sidewalk" project. However, the trial court could have justifiably concluded that it was Belich's testimony that was lacking in credibility because: (1) he could not produce any of Great Lakes Crushing's paperwork on this particular project; and (2) he admitted that he was never at the job site while the concrete was being poured. Accordingly, to the extent that the trial court relied upon the drivers' testimony in making its factual findings, it did not abuse its discretion in giving their testimony greater weight.

{¶25} In regard to the evidentiary value of the 50 tickets, Great Lakes Crushing

9

further notes that, in the first box on the tickets concerning the location of the job site, a reference is made to Summit "Road," in contrast to Summit "Street." Based upon this, the company states that the 50 tickets pertained to an entirely different project. As part of their respective testimony, each of the three drivers indicated that the drivers did not rely upon the first location box to give them directions to the job site. Instead, they rely upon a second box found at the bottom of each ticket. A review of the tickets admitted into evidence shows that each of the second boxes referred to the "Loop" on the university campus. Moreover, Todd Shaffer, the university employee who acted as construction manager on the "sidewalk" project, gave testimony indicating that the Loop was directly adjacent to Summit Street.

{¶26} If considered in isolation, the tickets and the three drivers' testimony may not have been sufficient to demonstrate that Great Lakes Crushing only used concrete from Medina Supply to install the Summit Street sidewalk. Nevertheless, Great Lakes Crushing has failed to establish on appeal that the foregoing evidence was not entitled to any weight on the controlling issue in the case. More importantly, the record shows that Shelly Materials presented other evidence supporting the finding that the Summit Street sidewalk was built solely with concrete from Medina Supply.

{¶27} As previously discussed, Shelly Materials' case was substantially based upon Todd Shaffer's testimony. As the construction manager for the university, Shaffer was able to testify that Medina Supply was listed on Great Lakes Crushing's submitted documents as the supplier of the concrete for the project. Shaffer further testified that he visited the job site on a regular basis during construction, and that he only saw trucks from Medina Supply delivering concrete. In addition, Shaffer testified that each load of

10

concrete delivered to the job site was tested by a separate company, and that the reports of that company only listed Medina Supply as the concrete supplier.

{¶28} As a direct challenge to Shaffer's testimony, Belich testified that it was his recollection that the university had approved a second company to supply concrete for the project. However, Shaffer expressly contradicted Belich, stating that there was only one approved supplier, and that company was Medina Supply. For the reasons noted above, the trial court could have justifiably concluded that, of the two of them, Shaffer's testimony was more believable.

{¶29} As a final evidentiary challenge, Great Lakes Crushing contends that the trial court erred in predicating its ultimate factual finding in part upon Shelly Materials' evidence concerning Medina Supply's use of a GPS system to track the location of its trucks. Great Lakes Crushing correctly notes that, although Shelly Materials produced a copy of a printout showing the GPS system could track the movement of trucks as to a specific job site, no printout was produced in relation to the Kent State sidewalk project. However, while the trial court referenced the GPS system in summarizing the testimony of the Medina Supply dispatcher, the court did not cite it as direct evidence that Medina Supply trucks were at the sidewalk job site on the dates in question. Hence, the record supports the conclusion that the trial court only considered the "GPS system" evidence as showing that Medina Supply had the ability to ensure that all of its trucks went to the correct job site.

{¶30} In considering whether a civil judgment is against the manifest weight of the evidence, an appellate court must apply the same standard as is used in reviewing a criminal judgment. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶17.

11

Under that standard, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In *Eastley*, at ¶20, the Supreme Court of Ohio quoted *Tewarson* with favor.

**{¶31}** Pursuant to the foregoing analysis, the trial court did not lose its way when it found that, in installing the new Summit Street sidewalk, Great Lakes Crushing used concrete that was supplied by Medina Supply. Thus, as none of the trial court's factual findings were against the manifest weight of the weight, Great Lakes Crushing's second and third assignments are without merit.

**{¶32}** Turning back to Great Lakes Crushing's first assignment, the company argues that Shelly Materials was not entitled to prevail because the elements for a legal contract were never established. In support of its position, Great Lakes Crushing raises four separate arguments for review. First, the company contends that Shelly Materials should not have been allowed to go forward on a contract claim because such a claim was never asserted in its complaint.

**{¶33}** As to this point, the trial record readily demonstrates that Shelly Materials never intended to proceed on a strict contract claim. Instead, the basic allegations in its complaint and the evidence it presented at trial shows that it was going forward solely on an "account" claim. Specifically, it was Shelly Materials' theory that, by executing the account agreement in March 2008, Great Lakes Crushing was creating an account with

12

Medina Supply, under which Medina Supply could bill the company for all concrete sold to it. Under this theory, any debt Great Lakes Crushing owed for the concrete used in the "sidewalk" project would be subject to the account agreement. Accordingly, Shelly Materials' complaint gave Great Lakes Crushing proper notice of the exact nature of the claims it was pursuing in the underlying action.

{¶34} Under the second argument in its first assignment, Great Lakes Crushing asserts that Shelly Materials was never able to demonstrate the existence of a separate contract under which Great Lakes Crushing actually agreed to purchase the concrete for the Summit Street sidewalk from Medina Supply. This argument is based upon the fact that Shelly Materials was not able to produce a written purchase order covering that particular job.

{¶35} Prior to addressing the merits of a "contract" argument, it must be decided whether the facts of a given case are governed by the common law or the Ohio Uniform Commercial Code, as set forth in R.C. 1301.01 et seq. *Tubelite Co., Inc. v. The Original Sign Studio, Inc.*, 176 Ohio App.3d 241, 2008-Ohio-1905, ¶12 (10th Dist.). R.C. 1302.02 provides that the commercial code is applicable to any transaction pertaining to goods. In turn, R.C. 1302.01(A)(8) defines the term "goods" as "all things (including specialty manufactured goods) which are movable at the time of identification to the contract for sale * * *."

{¶36} Given that Medina Supply's ready-mix concrete could be transported from the plant to a construction site, it is considered "goods" under the governing definition. *See Licking Cty. Joint Vocational School v. Joseph Baker & Assoc.*, 5th Dist. Licking No. CA-2846, 1982 Ohio App. LEXIS 15201, *26 (October 15, 1982). Thus, the Uniform

13

Commercial Code would govern in determining whether Great Lakes Crushing and Medina Supply entered into a separate contract for the sale of concrete to be used for the Summit Street sidewalk.

{¶37} As to the formation of a contract, R.C. 1302.07(A) states that a "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." In light of our disposition of Great Lakes Crushing's second and third assignments, this court also concludes that the conduct of the parties was sufficient to establish the existence of a separate contract for the sale of concrete covering the "sidewalk" project. The evidence showed that Medina Supply delivered 50 loads of concrete to the construction site, and Great Lakes Crushing used that concrete to build the new sidewalk.

{¶38} Under its third "contract" argument, Great Lakes Crushing maintains that a separate contract for the "sidewalk" job could not have existed because there was no evidence presented establishing that the parties had agreed to a price for the concrete. Even though the record confirms the absence of any evidence regarding an agreement on price, R.C. 1302.07(C) states that a contract for sale does not fail for indefiniteness when some terms are left open, so long as the parties "intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." In relation to an open price term, R.C. 1302.18 provides, in pertinent part:

{¶39} "(A) The parties if so intended can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time of delivery if:

{¶40} "(1) nothing is said as to price; or

14

**{¶41}** "(2) the price is left to be agreed by the parties and they fail to agree; * * *."

**{¶42}** During his trial testimony, a controller/financial officer for Shelly Materials stated that $78.50 was the "reasonably going rate" for a cubic yard of concrete at the time of the installation of the Summit Street sidewalk. The controller further testified that Medina Supply provided 453 cubic yards of concrete for the sidewalk. Thus, pursuant to these figures, a reasonable price for the concrete was $39,657.81. No contradicting evidence was presented on this point. Furthermore, the foregoing fully comported with the separate evidence indicating that, as part of its documentation submitted to Kent State at the outset of the job, Great Lakes Crushing stated that the costs of the concrete would be $40,000.

**{¶43}** Great Lakes Crushing aptly notes that, in its summary of the controller's testimony, the trial court improperly asserted that the controller testified as to the "price agreed upon as to the concrete * * *." However, given that the trial court's award of $39,657.81 is justified as the reasonable price under R.C 1302.18(A), the mischaracterization of the controller's testimony did not adversely affect the amount of the judgment, and therefore is harmless.

**{¶44}** Under the fourth argument of its first assignment, Great Lakes Crushing claims that, even if a separate contract did exist regarding the concrete for the Summit Street sidewalk, it is not enforceable under the applicable statute of frauds. In regard to a sale of goods, the governing statute of frauds is set forth in R.C. 1302.04:

**{¶45}** "(A) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has

15

been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

{¶46} "* * *

{¶47} "(C) A contract which does not satisfy the requirements of division (A) of this section but which is valid in other respects is enforceable:

{¶48} "* * *

{¶49} "(3) with respect to goods for which payment has been made and accepted *or which has been received and accepted in accordance with section 1302.64 of the Revised Code*." (Emphasis added.).

{¶50} Pursuant to R.C. 1302.64(A)(3), a buyer of goods will be deemed to have "accepted" the items when it performs any act that is inconsistent with the seller's rights as owner. In this case, Great Lakes Crushing used the concrete supplied by Medina Supply to create a permanent structure, i.e., a sidewalk. Since this act would deprive Medina Supply of the ability to retain ownership of the concrete, the exception to the statute of frauds under R.C. 1302.04(C)(3) applies. As a result, the lack of a written purchase order for the concrete would not bar Shelly Materials' claims to recover the costs of their product.

{¶51} Since Great Lakes Crushing has failed to establish any legal reason why Shelly Materials could not prevail on its "account" claim, its first assignment also lacks merit.

{¶52} Under its fourth assignment, Great Lakes Crushing submits that the trial court erred in ordering it to pay Shelly Materials' attorney fees as part of the total award of damages. In making this argument, though, the company has predicated its entire

16

analysis upon the assumption that Medina Supply never performed its obligations under the separate contract for the concrete. In other words, the company again assumes that Medina Supply did not provide any concrete for the Summit Street sidewalk.

{¶53} By entering into the account agreement, Great Lakes Crushing expressly agreed that its ongoing contractual relationship with Medina Supply would be based on the terms of that agreement. One of those terms provided that if it became necessary to bring a legal action in order to collect on an invoice, Great Lakes Crushing would be liable for Shelly Materials'/Medina Supply's attorney fees. Hence, since the evidence showed that Medina Supply did provide the concrete used to install the Summit Street sidewalk, the terms of the account agreement applied to Shelly Materials' efforts to collect by means of a legal action. For this reason, the trial court did not err in ordering the payment of attorney fees pursuant to the controlling term. Great Lakes Crushing's final assignment is without merit.

{¶54} As the cross-appellant in the cross-appeal, Shelly Materials asserts one assignment of error for review:

{¶55} "When the parties contract for a specific rate of interest on overdue accounts, the court errs in not using that agreed upon amount in its post-judgment rate of interest."

{¶56} As noted above, in ordering Great Lakes Crushing to pay prejudgment interest on the amount owed for the concrete, the trial court followed the express term in the account agreement which provided for 18 percent interest. As to the amount of post-judgment interest, though, the court ordered that Shelly Materials was only entitled to the statutory rate of interest. Under its sole assignment in the cross-appeal, Shelly

17

Materials argues that the trial court erred in not applying the contractual percentage to the accruement of any post-judgment interest.

**{¶57}** In support, Shelly Materials relies upon the language of R.C. 1343.03(A), which states, in pertinent part:

**{¶58}** "(A) [W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortuous conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, *unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.*" (Emphasis added.)

**{¶59}** In relation to book accounts and contracts, R.C. 1343.03(A) not only sets forth the rate of interest to be paid on "money" when it becomes due and payable under such items, but also the rate of interest to be paid on money judgments "arising out of" such items. In light of the dual nature of R.C. 1343.03(A), Ohio appellate courts have concluded that the statutory provision governs the rates for both prejudgment and post-judgment interest in "contract" actions. *See, e.g., Rutledge v. Lilley*, 9th Dist. Lorain No. 09CA009691, 2010-Ohio-2275, ¶10; *Myles v. Richardson*, 2d Dist. Montgomery No. 23186, 2009-Ohio-6394, ¶24. This conclusion would also apply to "account" actions. In contrast, in regard to tort actions, R.C. 1343.03(A) is only applicable to the payment of post-judgment interest. An award of prejudgment interest in a tort case is governed by

18

a separate provision, R.C. 1343.03(C).

{¶60} Hence, if two parties have contractually agreed to a percentage of interest to be paid on money due and payable upon a book account or contract, that percentage is also applicable to any interest accruing as to a judgment arising from the underlying transaction. As a general proposition, "a judgment creditor is entitled to an interest rate in excess of the statutory rate when (1) the parties have a written contract, and (2) that contract provides an interest rate for money that becomes due and payable." *Ohio Neighborhood Finance Inc. v. Massey*, 10th Dist. Franklin Nos. 10AP-1020 and 10AP-1121, 2011-Ohio-2165, ¶19.

{¶61} In this case, the written contract is the account agreement between Great Lakes Crushing and Medina Supply. This agreement stated that Great Lakes Crushing would be liable for "finance charges," i.e., interest, at a rate of 18 percent per year if it did not pay the amount "due" under an invoice within 30 days. Therefore, since both requirements for the application of R.C. 1343.03(A) were met, Shelly Materials was entitled to post-judgment interest at the same rate that governed prejudgment interest under the account agreement. For this reason, the trial court erred in ordering interest on the judgment at only the statutory rate.

{¶62} For the reasons stated in the opinion of this court, Great Lakes Crushing's four assignments in its direct appeal are without merit. However, Shelly Materials' sole assignment in its cross-appeal is well-taken. Accordingly, it is the order and judgment of this court that the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and the case is hereby remanded for further proceedings consistent with our opinion. Specifically, the trial court shall vacate its prior

19

final judgment and issue an amended final judgment. The amended judgment shall be the same as the prior judgment, except as to the payment of post-judgment interest. Regarding the latter point, the amended judgment shall order Great Lakes Crushing to pay post-judgment interest at a rate of 18 percent per year.

TIMOTHY P. CANNON, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.