[Cite as *Malin v. Studer*, 2014-Ohio-3366.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| WALTER MALIN, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-G-3150** |
| SCOTT STUDER, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 11 M 000661.

Judgment: Affirmed.

*Erik L. Walter*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Plaintiff-Appellant).

*Scott Studer*, pro se, 9657 Mayfield Road, Chesterland, OH 44026 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the final judgment in a civil action before the Geauga County Court of Common Pleas. After a bench trial, the trial court found in favor of appellant, Walter Malin, on his "breach of contract" claim and awarded him $786.57 in damages. Before this court, appellant maintains that the trial court made two errors in calculating damages. For the following reasons, we hold that the trial court did not error.

{¶2} Appellant has owned a 1975 Corvette since the early 1980's. Through the years, he made various repairs to the vehicle in order to maintain its condition. At some point in 2009, he decided to have the vehicle re-painted. While attending a local car show, appellant saw the paint job on a vehicle belonging to Robert Hecey. During their ensuing conversation, Hecey recommended appellee, Scott Studer, as qualified to paint appellant's Corvette.

{¶3} Appellee resides in Geauga County and has a barn on his property where he has re-painted numerous vehicles through the years. After an initial consultation in 2009, the men subsequently reached an agreement that appellee would perform certain work on the Corvette, including the installation of a new front bumper, body work on the front hood, a new paint job over the entire body, and other small detail work. Hence, on May 1, 2010, appellant delivered the car to appellee's residence for the work to begin.

{¶4} Appellant executed a written contract/invoice that appellee had prepared. The contract stated that appellant was to make an initial deposit of $600, and that the total amount owed for the job would be $2,300. According to appellee, the parties verbally agreed that appellant would make an initial deposit of $1,000, but he modified this provision in the contract because appellant only brought $600 with him when he delivered the vehicle. The contract also provided that the job would be done in approximately seven weeks.

{¶5} According to appellee, a few weeks after delivery, appellant returned to his residence and the parties verbally modified their agreement such that appellee would perform additional work for an additional $600. It is appellee's position that appellant agreed to pay the additional $600 immediately, and that his delay in making this

2

payment was the reason appellee delayed the project. Appellee's other reason for delaying the work was appellant's failure to timely provide necessary materials.

{¶6} On two instances over a sixty-day period between late May 2010 and late July 2010, appellant sent appellee an additional payment of $300. However, according to appellant, this additional $600 was not intended to pay for new work that was added to the project after May 1, 2010; instead, it was meant to pay for materials appellee said he needed and to give appellee incentive to go forward with the work. Appellant asserts that when he visited appellee's residence in late May 2010, appellee had not completed any work on the vehicle; furthermore, when he was there in late July 2010, the vehicle was disassembled and very little work had been performed. Appellant also asserts that, from June through September 2010, he tried to telephone appellee on many occasions, but appellee was never there and would not return his calls.

{¶7} In early September 2010, the parties had a telephonic conversation regarding the status of the project. According to appellant, appellee told him that he had just painted the vehicle, and that it only needed a few days to fully dry. Based upon this, appellee demanded immediate payment of the amount still owed. But appellant refused, stating that he would not make any further payments until he saw the car. As a result, nothing else occurred over the next few weeks.

{¶8} In early October 2010, appellee telephoned appellant and demanded that the vehicle be removed from his property. Fearing that appellee might be belligerent, appellant contacted the local police department and obtained a police escort. Although most of the car had been re-assembled, it could not be driven away; thus, appellant had to employ a flat-bed truck to remove the vehicle. Additionally, while parts of the vehicle

had been prepped for painting, none of the car had been painted.

{¶9} In returning the vehicle, appellee put some of the materials or new parts appellant bought inside the car. When appellant got the vehicle back to his home, he inventoried the returned items and determined that appellee had not returned some parts. Even though appellant immediately asked appellee to return those items, appellee did not address the matter until the underlying action was filed in June 2011. At that point, appellee returned the majority of the unreturned items. However, three parts, valued at $246.57, were not returned.

{¶10} In his complaint, appellant asserted claims sounding in breach of contract, fraud, unjust enrichment, theft and conversion of funds, and sought relief under R.C. 2307.60 and 2307.61. In the last claim, appellant alleged that appellee committed a theft offense in relation to the three unreturned parts and the $1,200 that was pre-paid for the contracted work. He, therefore, sought treble damages for the unreturned parts and the pre-paid funds. Appellant requested damages of $10,499.19.

{¶11} A one-day bench trial was held in May 2013. In addition to testifying on his own behalf, appellant presented the testimony of Russell Conley, a body shop operator since 1999. Conley testified that appellant asked him to inspect the Corvette and give an estimate regarding how much it would cost to paint the car. Conley testified that it would be necessary for him to strip the old paint from the body, clean-up certain spots appellee did not complete, repair other flaws on the body, and apply the new paint. Finally, Conley stated that it would take approximately eighty hours to complete the job, and that would cost $6,159.48.

{¶12} In addition to testifying in response, appellee presented the testimony of

4

Joseph Sutter, a mechanic who had restored at least twenty-five cars in his lifetime. As part of his testimony, Sutter stated that he saw appellant's Corvette at appellee's place in September 2010, approximately two weeks before it was given back to appellant. He further stated that, in his estimation, appellee had completed 90% of the "prep" work for the new paint job.

{¶13} In entering judgment in appellant's favor, the trial court made the following findings of fact: (1) appellant was only required to submit an initial deposit of $600, not $1,000; (2) appellant never agreed to the performance of additional work that was not set forth in the written contract/invoice; (3) appellee failed to satisfy his obligations under the contract; and (4) appellee's delay in completing the paint job was not legally justified. In light of the two latter two findings, the court found that appellee breached the contract for the paint job. However, the trial court also found that appellee did not act fraudulently or commit any theft offense as to the unreturned parts or the $1,200 appellant pre-paid for the work; hence, appellant was not entitled to treble damages under R.C. 2307.61. In addition, the court found that appellee did not breach any fiduciary duty as to the care of the vehicle.

{¶14} As to the award of damages, the trial court concluded that appellant was entitled to recover the value of the unreturned parts, $246.57, and a portion of the $1,200 payments. Regarding the latter amount, the court found that appellee had done some of the required work under the contract; as a result, the court held that appellant could recover $540 of the already paid $1,200. The total judgment is for $786.56.

{¶15} In appealing the trial court's calculation of damages, appellant raises two assignments of error for review:

5

{¶16} "[1.] The trial court abused its discretion in calculating the damages awarded to [appellant] in that it discounted the expert testimony of Russell Conley, [appellant's] expert in calculating the damage award.

{¶17} "[2.] The trial court abused its discretion in failing to find [appellee] violated ORC 2307.60 and/or 2307.61 and thereby failing to award treble damages and attorney fees"

{¶18} Under his first assignment, appellant contends that the trial court failed to accord proper weight to Russell Conley's testimony as to what it would cost to perform the work covered under the contract with appellee. As noted above, Conley testified on behalf of appellant that it would cost $6,159.48 to essentially redo appellee's work and then paint the Corvette. Appellant asserts that, since Conley's basic testimony was not contradicted by appellee, the trial court should have adopted the $6,159.48 figure as the proper measure of damages for appellee's failure to perform the contracted work.

{¶19} In its final judgment, the trial court expressly stated that it found Conley's testimony to be "convincing." Therefore, the trial court's rejection of Conley's figure was not due to the fact that it did not find his testimony believable. Instead, the court held that, as a matter of law, the Conley figure was not the proper measure of damages because the total sum of work appellee was required to do under the contract was $2,300. As part of its analysis, the trial court stated:

{¶20} "The finding is that [Conley], while persuasive in his testimony, was going to perform a job that exceeded the work that [appellee] was hired to do. [Appellee] was not hired to do the exacting job that [Conley] estimated. For instance, [Conley] envisioned stripping the whole car down of all of the paint before starting any work.

That was not the agreement between [appellee] and [appellant].. * * * The Court finds that [appellee] quoted a job that didn't include completely stripping the car of all paint, and primer, and [appellant] agreed to that job."

{¶21} The record contains some evidence supporting the trial court's finding on this point. During cross-examination, it was demonstrated that Conley's estimate was based upon his intention to strip the vehicle of all existing paint, including the primer that appellee had sprayed on the body in preparing it to be painted. Thus, Conley's work in "prepping" the car for the paint job would be different than the work appellee performed and agreed to do. As to the paint job itself, Conley said that he would apply multiple coats of paints, as compared to a one-coat job. Last, when Conley was asked if the paint job he had estimated could be done for $2,000, he testified that it was not possible.

{¶22} On direct examination, Conley stated that his estimate included "cleaning up the previous work and stripping and repairing anything that hadn't been repaired properly and refinishing it." However, on cross-examination, Conley clarified his prior testimony and stated that his estimate did not encompass repairing any specific work performed by appellee. Accordingly, this was not a situation in which Conley's estimate was higher because it would be necessary to correct any damage to the car caused by appellee. Instead, the higher estimate was due to the fact that Conley would be doing a different type of paint job than the one appellee agreed to do for appellant.

{¶23} Hence, the trial court did not err in refusing to base its calculation of damages upon the Conley testimony.

{¶24} As a general proposition, a judgment will be reversed as being against the

7

manifest weight of the evidence only when the trier of fact clearly lost its way, thereby creating a manifest miscarriage of justice. *Shelly Materials, Inc. v. Great Lakes Crushing, LTD.*, 11th Dist. Portage No. 2013-P-0016, 2013-Ohio-5654, ¶30. In light of the foregoing, the trial court did not err in failing to award damages consistent with Conley's testimony. Appellant's first assignment is without merit.

**{¶25}** Under his second assignment, appellant maintains that the trial court erred in not awarding treble damages as to the unreturned funds and parts. Citing R.C. 2307.60 and 2306.61, he contends that he was entitled to treble damages and attorney fees because appellee committed a "theft offense" by failing to return parts and money.

**{¶26}** R.C. 2307.60 governs a person's statutory right to seek financial recovery for a criminal act. Division (A)(1) generally states that if an individual has been injured in person or property, he may bring a civil action to recover full damages, attorney fees, and the costs of maintaining the action. In turn, R.C. 2307.61 sets forth the means for calculating damages in a R.C. 2307.60 action when a property owner has been the victim of a theft offense. Division (A) of the latter statute provides, in pertinent part:

**{¶27}** "(A) If a property owner brings a civil action pursuant to division (A) of section 2307.60 of the Revised Code to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.02 of the Revised Code, the property owner may recovers as follows:

**{¶28}** "(1) In the civil action, the property owner may elect to recover moneys as described in division (A)(1)(a) or (b) of this section:

**{¶29}** "* * *

**{¶30}** "(b) Liquidated damages in whichever of the following amounts is greater:

8

**{¶31}** "(i)Two hundred dollars;

**{¶32}** "(ii) Three times the value of the property at the time it was willfully damaged or was the subject of a theft offense, irrespective of whether the property is recovered by way of replevin or otherwise, is destroyed or otherwise damaged, is modified otherwise altered, is resalable at its full market price. * * *."

**{¶33}** Additionally, R.C. 2307.61(A)(2) provides that if the property owner sent a written demand letter to the defendant prior to filing the case and the defendant failed to make the required payment, the property owner can also recover attorney fees, the costs of bringing the action, and reasonable administrative costs.

**{¶34}** In our case, there is no dispute that, appellant sent a written demand letter prior to instituting the underlying case and appellee did not return any of the $1,200 appellant pre-paid for the work. Moreover, as to the parts appellant bought for the project, although appellee returned the majority of the retained items after the case began, there were certain parts valued at $246.57 that were not returned. The trial court found appellee was liable for damages for the value of the unreturned parts and unearned funds. Nevertheless, the court also expressly found that appellee did not commit a "theft offense" as to the unreturned parts and the funds. In making this finding, the trial court did not provide any explanation.

**{¶35}** Pursuant to R.C. 2913.02(A)(2), a person can be found guilty of theft if he, with *purpose* to deprive another individual of his property, *knowingly* exerts control over the property which is beyond the scope of the owner's express or implied consent. When the evidence is viewed in its entirety, it does not demonstrate that the trial court lost its way in concluding that appellant failed to prove a "theft offense" as to the

9

unreturned parts or money.

{¶36} Consistent with the foregoing analysis, the judgment of the Geauga County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.