TUBELITE COMPANY, INC., Appellee,

v.

The ORIGINAL SIGN STUDIO, INC., a.k.a. The Sign Studio, Inc. et al., Appellants.

[Cite as Tubelite Co., Inc. v. Original Sign Studio,
Inc., 176 Ohio App.3d 241, 2008-Ohio-1905.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–601.

Decided April 22, 2008.

242

&#x1F511;33

Jeffrey B. Sams, for appellee.

Eric L. Weeden Co., L.P.A., and Eric L. Weeden, for appellants.

KLATT, Judge.

{¶ 1} Defendants-appellants, The Original Sign Studio, Inc. ("Sign Studio") and Tammy Kornell,[1] appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment to plaintiff-appellee, Tubelite Company, Inc. For the following reasons, we reverse and remand.

{¶ 2} Sign Studio designs, manufactures, and installs interior and exterior signs. Tubelite began supplying materials to Sign Studio in the early 1990s. In October 2003, Kornell, the president of Sign Studio, completed, signed, and

---

1. Tammy Kornell is now known as Tammy Lenhardt, but we will refer to her throughout this opinion as "Kornell" because that is the name that Tubelite used in the complaint.

delivered an "Application for Credit" to Tubelite. The application included a personal guarantee and a portion entitled "Agreement," which read:

> Customer and all guarantors herein agree to pay to Seller all amounts for all materials and services provided, shipped or billed to the Customer or at the Customer's request within thirty days of any invoice or as agreed to by seller in writing. The Customer and guarantors further agree to pay a finance charge imposed at the rate of 18% per annum on any invoice not paid within sixty days or as agreed to by seller in writing. The Customer agrees this account may be placed on COD should payment not be made within thirty days of invoice or as agreed to by seller in writing. Customer and guarantors agree to pay all costs and expenses of collection of any amounts hereunder, including reasonable attorney's fees. Customer and guarantors hereby stipulate to jurisdiction and exclusive venue for any claims arising from this business relationship or under this Agreement and guaranty in the state court located in the county of Seller's office for which the order for goods or services was placed.

{¶ 3} In late 2003, Sign Studio decided to select a single supplier to provide all of the materials it needed so that it could receive a volume discount and streamline its production schedule. When Sign Studio informed Tubelite of its decision, Tubelite suggested a "consignment agreement." Under the terms of this agreement, Tubelite agreed to deliver a large volume of materials to Sign Studio's facility. Tubelite also agreed to install metal shelving to hold the materials. Tubelite would then monitor Sign Studio's inventory levels and invoice Sign Studio only for the materials that it actually used. Tubelite agreed to discount the prices for the materials used by ten to 25 percent.

{¶ 4} Sign Studio drafted a "Letter of Understanding Acknowledgment" to memorialize the terms of the oral agreement that the parties had negotiated. At a February 25, 2004 meeting, Sign Studio presented the letter to Herb Scott, the president of Tubelite. Although Scott did not sign the letter, Kornell claims that he stated, "I agree to this. My word is my bond." Scott, however, denies ever agreeing to the consignment agreement. Although Scott acknowledges that the parties discussed entering into a consignment agreement, he claims that a contract never resulted from those discussions.

{¶ 5} After the February meeting, Tubelite installed shelving at Sign Studio's facility and delivered a substantial portion of the initial bulk inventory. Contrary to the terms of the consignment agreement, Tubelite invoiced Sign Studio for all of the inventory, not just the portion that Sign Studio had used. Moreover, the invoices did not reflect a ten to 25 percent discount. In response, Sign Studio did not pay the full invoice amounts. Rather, it paid only for those materials it had used, and it applied a 25 percent blanket discount.

{¶ 6} On October 19, 2005, Tubelite filed a complaint in the trial court, asserting claims for breach of contract and unjust enrichment. Tubelite alleged that Sign Studio owed it $67,340.43, plus interest, for materials invoiced from October 21, 2004, to July 29, 2005.

{¶ 7} Tubelite moved for summary judgment, arguing that Sign Studio had breached the agreement portion of the application ("credit agreement") and that this breach entitled Tubelite to the amounts invoiced but not paid. In its memorandum contra, Sign Studio contended that the terms of the consignment agreement—not the credit agreement—controlled the parties' transactions. Based upon those terms, Sign Studio maintained that a question of fact remained regarding what amount (if any) Sign Studio owed to Tubelite.

{¶ 8} The trial court found that the credit agreement was the only valid and enforceable contract between the parties, and thus, it granted summary judgment to Tubelite on its breach-of-contract claim. On June 27, 2007, the trial court entered judgment in Tubelite's favor.

{¶ 9} Sign Studio now appeals from the June 27, 2007 judgment entry and assigns the following errors:

█ The lower court erred by granting summary judgment to plaintiff on plaintiff's claim for breach of contract, where the lower court resolved material issues of fact in favor of plaintiff despite competent and material evidence defendants presented disputing those facts.

█ The lower court erred by granting summary judgment to plaintiff on plaintiff's claim for breach of contract, where the lower court refused to accept competent and material evidence of contractual terms and conduct by plaintiff that were contrary to plaintiff's assertions.

█ The lower court's grant of summary judgment is contrary to law.

{¶ 10} Appellate review of summary judgment motions is de novo. *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 548, 757 N.E.2d 329. "'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.'" *Abrams v. Worthington,* 169 Ohio App.3d 94, 2006-Ohio-5516, 861 N.E.2d 920, at ¶ 11, quoting *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, at ¶ 6.

{¶ 11} We will address Sign Studio's second assignment of error first. By that assignment of error, Sign Studio argues that the trial court erred in ruling that the consignment agreement was not a valid and enforceable contract. While we conclude that the consignment agreement satisfies the statute of frauds, we also find that a genuine issue of material fact remains regarding whether both parties agreed to it.

{¶ 12} Before addressing the merits of Sign Studio's argument, we must determine whether this case is governed by common law or the Ohio Uniform Commercial Code, R.C. 1301.01 et seq. R.C. 1302.01 through 1302.98—the sections of the Ohio Uniform Commercial Code dealing with sales—apply to transactions in goods. R.C. 1302.02. Goods are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." R.C. 1302.01(A)(8). Here, Tubelite seeks to recover payment for signage materials that it sold to Sign Studio. As these materials are "movable," the Ohio Uniform Commercial Code applies to the transactions at issue.

{¶ 13} R.C. 1302.04 contains the statute of frauds applicable to transactions for the sale of goods. Pursuant to that section:

(A) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this division beyond the quantity of goods shown in such writing.

(B) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of division (A) of this section against such party unless written notice of objection to its contents is given within ten days after it is received.

Sign Studio concedes that the consignment agreement does not meet the signature requirement contained in division (A). However, Sign Studio argues that the consignment agreement is enforceable against Tubelite pursuant to division (B).

{¶ 14} R.C. 1302.04(B) provides an exception to the requirements of R.C. 1302.04(A), and it is designed to make a letter of confirmation a safe and normal way to satisfy the statute of frauds. 1 Hawkland, Uniform Commercial Code

Series (2001) 133, Section 2–201:5. R.C. 1302.04(B) accomplishes this goal by making the failure to answer a confirmatory writing tantamount to signing that writing. Official Comment 3 to Uniform Commercial Code ("U.C.C.") 2–201.

{¶ 15} Here, Sign Studio presented the letter memorializing the oral consignment agreement to Tubelite during the February 25, 2004 meeting. That letter states, "The purpose of this document reflects the agreements reached between the parties," and "The parties agreed to a full consignment program, as described by the participants from, Tubelite Co., Inc., to the participants representing, The Original Sign Studio, Inc." The letter also sets forth a description of the goods to be sold, the quantity of the goods, and pricing and payment terms. Tubelite did not provide any written response to the letter. Therefore, pursuant to the R.C. 1302.04(B) exception, the letter satisfies the statute of frauds. Because Tubelite remained silent after the receipt of a confirmatory writing that expressed a complete contract, the statute of frauds does not render the consignment agreement unenforceable.

{¶ 16} However, the statute of frauds is not the only hurdle Sign Studio must negotiate in order to prevail against Tubelite's summary judgment motion. Although the failure to object to a confirmatory writing eliminates a statute of frauds defense, it does not establish the existence of a contract. *Am. Bronze Corp. v. Streamway Prod.* (1982), 8 Ohio App.3d 223, 227–228, 8 OBR 295, 456 N.E.2d 1295; Official Comment 3 to U.C.C. 2–201. A party who sends a confirmatory writing still bears the burden of persuading the trier of fact that the receiving party actually agreed to the oral contract memorialized in the confirmatory writing. Id.

{¶ 17} Consequently, to prove that the consignment agreement is a valid contract, Sign Studio must produce evidence that Tubelite agreed to the consignment agreement. To satisfy this burden, Sign Studio relies upon Kornell's testimony that Scott orally agreed to the terms expressed in the letter. Further, Sign Studio points to evidence that Tubelite acted in accordance with the terms of the consignment agreement when it installed shelving units at the Sign Studio facility. Tubelite responds to this evidence with Scott's unequivocal testimony that he never agreed to the consignment agreement. Given the conflicting evidence, a question of fact remains regarding whether Tubelite agreed to the consignment agreement.

{¶ 18} Therefore, we conclude that the trial court erred in finding as a matter of law that the consignment agreement was neither valid nor enforceable. Accordingly, we sustain Sign Studio's second assignment of error.

{¶ 19} By Sign Studio's third assignment of error, it argues that the credit agreement is not a contract because it does not contain essential terms.

Sign Studio also asserts that the trial court erred in refusing to give effect to the consignment agreement. Although we agree that the credit agreement is not a valid contract for the sale of goods, we also conclude that a question of fact exists as to what contractual terms govern the parties' transactions.

{¶ 20} Unlike the common law, the Ohio Uniform Commercial Code does not require that all essential terms of a contract be definite in order for the contract to be enforceable. 2 Anderson, Uniform Commercial Code (3d Ed.1997) 477, Section 2–204:210. "Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." R.C. 1302.07(C). Thus, the fact that certain terms are missing does not defeat an otherwise adequate contract. Official Comment to U.C.C. 2–204. However, in the absence of some basic terms—such as the description and quantity of the goods—a contract may not exist. 1 Hawkland, Uniform Commercial Code Series (2001), Section 2–204:3.

{¶ 21} In the case at bar, multiple terms are missing from the credit agreement; it fails to identify the goods to be sold, and it lacks quantity and pricing terms. While the credit agreement explicitly details the terms of payment, it is silent as to the actual substance of the parties' deal—the materials Tubelite was selling and the price Sign Studio must pay for those materials. Given the absence of these terms, we conclude that the credit agreement is not a valid contract for the sale of goods.

{¶ 22} Nevertheless, the credit agreement could be an instrumental part of a contract formed by the parties' conduct. "Conduct by both parties that recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case, the terms of the particular contract consist of those terms on which the writings of the parties agree * * *." R.C. 1302.10(C). See also R.C. 1302.07(A) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract"). Thus, a contract for the sale of goods can arise where one party ships goods and the other party receives and pays for the goods. *Alliance Wall Corp. v. Ampat Midwest Corp.* (1984), 17 Ohio App.3d 59, 62, 17 OBR 114, 477 N.E.2d 1206. See also *McJunkin Corp. v. Mechanicals, Inc.* (C.A.6, 1989), 888 F.2d 481, 488; Official Comment 7 to U.C.C. 2–207. When the parties' conduct establishes the contract, only the nature of the terms—not the existence of the contract—remains in dispute. *Standard Bent Glass Corp. v. Glassrobots Oy* (C.A.3, 2003), 333 F.3d 440, 445; Official Comment 7 to U.C.C. 2–207.

{¶ 23} Here, the parties agree that Tubelite shipped signage materials and that Sign Studio received and partially paid for those materials. However, they differ as to when delivery of the materials occurred. As this matter is before us for review of a grant of summary judgment, we must construe the evidence in favor of Sign Studio, the nonmoving party. *Ryll v. Columbus Fireworks Display Co., Inc.*, 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, at ¶ 27. According to Kornell, Sign Studio did not receive any materials from Tubelite between the time she submitted the application and the formation of the consignment agreement. In her affidavit, Kornell testified that the first delivery that Sign Studio received after she submitted the application was the delivery of the initial bulk inventory contemplated in the consignment agreement.

{¶ 24} A reasonable trier of fact could interpret the delivery and acceptance of these materials in two different ways. First, based upon R.C. 1302.10(C), a fact-finder could conclude that a contract between the parties arose when Sign Studio accepted receipt of Tubelite's shipment. At that point, the parties' conduct demonstrated that a contract existed. "Sellers usually do not ship and buyers do not receive goods unless they think they have struck a deal." *Quaker State Mushroom Co., Inc. v. Dominick's Finer Foods, Inc.* (N.D.Ill.1986), 635 F.Supp. 1281, 1285.

{¶ 25} If the parties' conduct established a contract, then the credit agreement could supply the terms of that contract. As we stated above, when a contract arises through the parties' conduct, the terms of the contract are those terms on which the parties agree. R.C. 1302.10(C). Both Tubelite and Sign Studio agreed to the terms of the credit agreement. Thus, although the credit agreement is not a contract itself, the terms of the credit agreement could serve as the terms of a contract formed by the parties' conduct. In this scenario, Tubelite could recover the amounts it invoiced Sign Studio pursuant to the terms of the credit agreement.

{¶ 26} On the other hand, a reasonable trier of fact could conclude that the delivery and acceptance of the signage materials constituted performance of the consignment agreement. Kornell testified in her affidavit that Scott reviewed and orally agreed to the consignment agreement contained in the letter. Kornell also testified that Tubelite acted in accordance with the consignment agreement when it shipped the initial bulk inventory. If a fact-finder accepts Kornell's version of events, then the delivery and acceptance of the signage materials did not create a contract but, instead, was performance of a contract already in place—i.e., the consignment agreement. Based upon Kornell's testimony, a fact-finder could conclude that the parties intended the consignment agreement to govern their transactions. If a fact-finder so concludes, Tubelite's recovery could

be limited by the invoicing scheme and pricing discounts that the consignment agreement mandates.

{¶ 27} In sum, we conclude that the trial court erred in granting summary judgment because genuine issues of material fact remain to be resolved. A fact-finder must determine whether the shipment and acceptance of the signage materials created a contract or constituted performance of a contract. This determination, in turn, depends upon whether Tubelite agreed to the consignment agreement. If Tubelite did agree, then Tubelite was performing pursuant to the consignment agreement when it delivered the materials, and its recovery depends upon the terms of that agreement. If Tubelite did not agree to the consignment agreement, then that agreement never became a contract, and instead, the parties' contract arose from the delivery of the materials. In the latter case, the terms of the credit agreement—not the consignment agreement—control Tubelite's recovery.

{¶ 28} Due to the existence of genuine issues of material fact, the trial court erred in granting Tubelite summary judgment. Accordingly, we sustain Sign Studio's third assignment of error.

{¶ 29} Based upon our resolution of Sign Studio's second and third assignments of error, its first assignment of error is moot. Therefore, we do not address it.

{¶ 30} For the foregoing reasons, we sustain Sign Studio's second and third assignments of error, and therefore Sign Studio's first assignment of error is moot. Additionally, we reverse the judgment of the Franklin County Court of Common Pleas, and we remand this case to that court for further proceedings in accordance with law and this opinion.

Judgment reversed
and cause remanded.

BRYANT and TYACK, JJ., concur.