[Cite as *H & C Ag Servs., L.L.C. v. Ohio Fresh Eggs, L.L.C.*, 2015-Ohio-3714.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

H & C AG SERVICES, LLC, d.b.a.
LANDTECH CO.,

      **PLAINTIFF-APPELLEE/**              **CASE NO.  6-15-02**
      **CROSS-APPELLANT,**

      **v.**

OHIO FRESH EGGS, LLC, ET AL.,       **O P I N I O N**

      **DEFENDANTS-APPELLANTS/**
      **CROSS-APPELLEES.**

**Appeal from Hardin County Common Pleas Court**
**Trial Court No. 20131139 CVG**

**Judgment Reversed and Cause Remanded**

**Date of Decision:   September 14, 2015**

**APPEARANCES:**

    *John C. Albert* **for Appellant/Cross-Appellee, Ohio Fresh Eggs, LLC**

    *Douglas R. Cole* **for Appellant/Cross-Appellee,**
        **Trillium Farm Holdings, LLC**

    *Terrence G. Stolly* **for Appellee/Cross-Appellant**

{¶1} Defendants-appellants/cross-appellees, Ohio Fresh Eggs, LLC ("OFE") and Trillium Farm Holdings, LLC ("Trillium"), appeal the November 12, 2014 and January 20, 2015 judgment entries of the Hardin County Court of Common Pleas entering judgment on the jury's verdict and denying their motions for judgment notwithstanding the verdict following a jury trial, respectively. Plaintiff-appellee/cross-appellant, H & C Ag Services, LLC, d.b.a. LandTech Co. ("LandTech"), appeals the January 20, 2015 judgment entries of the Hardin County Court of Common Pleas denying LandTech's motion for judgment notwithstanding the verdict and denying its motion to certify the judgment as a joint and several, total damage award. For the reasons that follow, we reverse.

{¶2} This case stems from a dispute concerning the rights to remove chicken manure from egg-laying facilities in Hardin County, Ohio. (*See* Doc. No. 17). After initially filing a complaint on August 23, 2013, LandTech, on September 27, 2013 and with leave of court, filed its first amended complaint. (Doc. Nos. 1, 17). In its first amended complaint, LandTech asserted a total of ten counts. Four counts were against both OFE and Trillium: Count One of breach of a July 1, 2006 written contract titled, "Ohio Fresh Eggs, LLC Contractor Outsourcing Agreement" (the "Agreement"); Count Three of breach of a contract for manure brokering; Count Four of breach of a "2012 Manure Implied-in-Fact Contract"; and Count Five of promissory estoppel. (Doc. No. 17). Against

Trillium only, LandTech asserted five counts: Count Two of "Breach of 2011 Implied in Fact Contract"; Count Six of tortious interference with contractual relations; Count Seven of tortious interference with business relations; Count Eight of negligent misrepresentation; and Count Nine of fraud. (*Id.*). Against OFE only, LandTech asserted Count Ten of respondeat superior. (*Id.*).

{¶3} On October 1, 2013, LandTech filed a motion for an ex parte temporary restraining order and a preliminary injunction. (Doc. No. 20).

{¶4} On October 2, 2013, OFE filed its answer, and Trillium filed its answer and counterclaim. (Doc. Nos. 29, 21). Trillium's counterclaim against LandTech included: Count One of declaratory judgment; Count Two of tortious interference with contractual relationship; and Count Three of tortious interference with business relations. (Doc. No. 21). Also on October 2, 2013, Trillium filed a memorandum in opposition to LandTech's motion for an ex parte temporary restraining order and a preliminary injunction. (Doc. No. 24).

{¶5} The trial court denied LandTech's ex parte motion for a temporary restraining order, but it held a hearing on October 3, 2013 concerning LandTech's request for a preliminary injunction. (Doc. No. 31); (Oct. 3, 2013 Tr. at 2). On October 14, 2013, the trial court filed an entry denying LandTech's motion for a preliminary injunction. (Doc. No. 36).

{¶6} On October 16, 2013, LandTech filed a reply to Trillium's counterclaim. (Doc. No. 37).

{¶7} On August 28, 2014, Trillium and OFE each filed a motion for summary judgment on all of the counts against each in LandTech's first amended complaint. (Doc. Nos. 93, 94).

{¶8} On September 11, 2014, LandTech filed a notice of voluntary dismissal of Counts Two through Ten of its first amended complaint, leaving only Count One. (Doc. No. 95). That same day, LandTech filed a combined memorandum in opposition to Trillium's and OFE's motions for summary judgment. (Doc. No. 96).

{¶9} On September 18 and 19, 2014, Trillium and OFE, respectively, each filed a reply memorandum in support of its motion for summary judgment. (Doc. Nos. 103, 104).

{¶10} On September 29 and 30, 2014, Trillium and OFE, respectively, each filed a "motion for summary judgment on damages." (Doc. Nos. 106, 110).

{¶11} On October 3, 2014, the trial court denied all of Trillium's and OFE's motions for summary judgment, concluding that genuine issues of material fact remained. (Doc. No. 111).

{¶12} The case was tried to a jury on October 29, 30, and 31, 2014. (*See* Doc. No. 160). At the outset of the trial, Trillium dismissed Counts Two and

Three of its counterclaim, leaving only Count One for declaratory judgment. (Trial Tr., Vol. I, at 70). During the trial, Trillium and OFE made motions for a directed verdict under Civ.R. 50, which the trial court denied. (*See* Doc. Nos. 142, 160). At the conclusion of the trial, the jury returned a verdict in favor of LandTech and against OFE in the amount of $2,584,846.50 and against Trillium in the amount of $2,584,846.50. (Trial Tr., Vol. VII, at 157-161); (Doc. No. 145).

{¶13} On November 12, 2014, the trial court filed a judgment entry on the jury's verdict granting judgment in favor of LandTech and against OFE in the amount of $2,584,846.50, and judgment in favor of LandTech and against Trillium in the amount of $2,584,846.50. (Doc. No. 160). The trial court also "denied" Trillium's counterclaim for declaratory judgment. (*Id.*).

{¶14} On December 1, 2014, Trillium filed a motion for judgment notwithstanding the verdict. (Doc. No. 166).

{¶15} On December 10, 2014, OFE filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. (Doc. No. 175).

{¶16} On December 10, 2014, LandTech filed a motion for certification of the judgment. (Doc. No. 176). In that motion, LandTech requested that the trial court certify the judgment as a joint and several, total damage award of $5,169,693 against OFE and Trillium. (*Id.*).

{¶17} Also on December 10, 2014, LandTech filed a motion for judgment notwithstanding the verdict. (Doc. No. 177).

{¶18} On December 15, 2014, LandTech filed a memorandum in opposition to Trillium's motion for judgment notwithstanding the verdict. (Doc. No. 179).

{¶19} On December 23, 2014, Trillium filed memorandums in opposition to LandTech's motions for judgment notwithstanding the verdict and to certify the judgment. (Doc. Nos. 182, 183). Trillium also filed a reply memorandum in support of its motion for judgment notwithstanding the verdict. (Doc. No. 184).

{¶20} On December 23, 2014, LandTech filed a memorandum in opposition to OFE's motion for judgment notwithstanding the verdict or, alternatively, for a new trial. (Doc. No. 185).

{¶21} On December 23, 2014, OFE filed a memorandum in opposition to LandTech's motions for judgment notwithstanding the verdict and to certify the judgment. (Doc. No. 186).

{¶22} On December 30, 2014, LandTech filed a reply memorandum in support of its motions for judgment notwithstanding the verdict and to certify the judgment. (Doc. No. 187).

{¶23} On December 30, 2014, OFE filed a reply memorandum in support of its motion for judgment notwithstanding the verdict or, alternatively, for a new trial. (Doc. No. 189).

{¶24} On January 20, 2015, the trial court filed an entry denying Trillium's, LandTech's, and OFE's motions for judgment notwithstanding the verdict and OFE's alternative request for a new trial. (Doc. No. 190). The trial court also filed an entry denying LandTech's motion to certify the judgment. (Doc. No. 192).

{¶25} OFE and Trillium filed their notices of appeal on February 18, 2015. (Doc. Nos. 202, 199). LandTech filed its notice of cross-appeal on March 2, 2015. (Doc. No. 205). OFE raises seven assignments of error, Trillium raises five assignments of error, and LandTech raises two assignments of error. Because they are dispositive, we address only OFE's and Trillium's first assignments of error together.

### OFE's Assignment of Error No. I

**The trial court erred in denying Ohio Fresh Eggs judgment as a matter of law because the agreement between Ohio Fresh Eggs and plaintiff LandTech expressly left open the quantity of manure that Ohio Fresh Eggs was to provide and therefore did not create an enforceable contract as a matter of law. (App. at B16)**

**Trillium's Assignment of Error No. I**

**The trial court erred in denying Trillium's JNOV motion, and the jury's verdict is against the manifest weight of the evidence, because the 2006 Agreement was an unenforceable "agreement to agree," or, alternatively, an unenforceable illusory requirements contract that failed to provide any requisite conditions or circumstances from which the quantities involved in the contract could be approximated. (See Order Denying JNOV at 2; Trial Transcript, Vol. VIII at 157-161; Jury Verdict Form And Interrogatories).**

{¶26} In its first assignment of error, OFE argues that, because the Agreement lacks a quantity term and is not a requirements contract, it is unenforceable, and the trial court erred by denying its motion for summary judgment and its motion for judgment notwithstanding the verdict. Trillium, in its first assignment of error, similarly argues that, for the same reasons OFE offers, the trial court erred by denying its motion for judgment notwithstanding the verdict. In response, LandTech argues that the Agreement provides a quantity term or, in the alternative, is a requirements contract. We agree with OFE and Trillium. This case never should have gone to trial.

{¶27} The relevant portions of the Agreement are as follows. Paragraph 3 of the Agreement, titled "Service Fees," provides, "Subject to the terms and conditions of this agreement, Bidder agrees to pay OFE for the transfer of manure ownership under the conditions set forth in Appendix 'A & B.'" (Joint Trial Ex. 1). Paragraph D of Appendix A provides, "Tonnage of the manure removed will

be tracked and billed according to the quantities listed on the 'OFE – Manure Management Manifest.'" (*Id.*). Paragraph 3 of Appendix B provides, "Quantity. On tonnage per year, Bidder proposes to broker all available tonnage per year of manure. Specific quantity to be determined by and mutually agreeable [sic] both parties." (*Id.*). Later, under the heading "Agreement," Appendix B provides, "Bidder agrees to be bound by agreements if Ohio Fresh Eggs, LLC accepts the above-fulfilled proposal." (*Id.*). Underneath that "Agreement" section, there are executed signature lines for "Land Tech" under "Contractor Signature" and for "Ohio Fresh Eggs, LLC" under "OFE Proposal Acceptance." (*Id.*).

{¶28} In denying LandTech's motion for a preliminary injunction, the trial court concluded that LandTech did not prove by clear and convincing evidence that it was substantially likely to prevail on the merits of its underlying substantive claim because "the Court cannot find any written provision in the written contract dated July 1st, 2006 requiring Trillium or OFE to provide to LandTech all, or any specific amount of chicken manure/litter." (Doc. No. 36 at 5). In its findings preceding this conclusion, the trial court elaborated, "A careful reading of the original agreement and both Appendix A and B, reveals no provision stating the quantity of chicken manure/litter to be provided by OFE to LandTech." (Emphasis sic.) (*Id.* at 3).

**{¶29}** Later in the case, Trillium and OFE argued in their motions for summary judgment that they were entitled to judgment as a matter of law because, among other reasons, the Agreement is unenforceable because it lacks a quantity term. (Doc. No. 93 at 11-13); (Doc. No. 94 at 4). In response to Trillium's and OFE's motions for summary judgment, LandTech voluntarily dismissed all but one count of its first amended complaint: breach of the Agreement. (Doc. No. 95); (Doc. No. 17). In its entry denying Trillium's and OFE's motions for summary judgment, the trial court analyzed several issues in the case; however, it did not analyze whether the Agreement contained a quantity term sufficient to make the Agreement enforceable. The case proceeded to trial, and the trial court denied Trillium's and OFE's motions for judgment notwithstanding the verdict after the jury returned a verdict in favor of LandTech.

**{¶30}** We review de novo a trial court's decision to deny summary judgment. *Heider v. Siemens*, 3d Dist. Allen No. 1-10-66, 2011-Ohio-901, ¶ 30, citing *Wampler v. Higgins*, 93 Ohio St.3d 111, 127 (2001). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶31} We also review de novo a trial court's decision to grant or deny a Civ.R. 50(B) motion for judgment notwithstanding the verdict ("JNOV"). *First Fed. Bank of Ohio v. Angelini*, 3d Dist. Crawford No. 3-11-11, 2012-Ohio-2137, ¶ 8, citing *Osler v. Lorain*, 28 Ohio St.3d 345, 347 (1986). "A JNOV is proper if upon viewing the evidence in a light most favorable to the nonmoving party and presuming any doubt to favor the nonmoving party, reasonable minds could come to but one conclusion, that being in favor of the moving party." *Id.*, citing Civ.R. 50(B) and *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 3. "Such a decision does not determine factual issues, but only questions of law, even though it is necessary to review and consider the evidence in deciding the motion." *Id.*, citing *Goodyear Tire & Rubber Co.* at ¶ 4. "'Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon [JNOV].'" *Id.*, quoting *Osler* at 347.

{¶32} The first question we must answer in addressing OFE's and Trillium's first assignments of error is whether the Agreement is an agreement for the sale of services, and governed by common law, or for the sale of goods, and governed by the chapter of the Ohio Uniform Commercial Code ("UCC") addressing sales, R.C. Chapter 1302. *See Tubelite Co., Inc. v. Original Sign Studio, Inc.*, 176 Ohio App.3d 241, 2008-Ohio-1905, ¶ 12 (10th Dist.). LandTech argues that the Agreement is for the sale of services—namely, "manure removal

services." (LandTech's Brief at 13). OFE and Trillium argue that the Agreement is for the sale of goods—namely, chicken manure. We conclude that the Agreement is governed by the UCC because it is a contract for the sale of goods.

{¶33} R.C. 1302.01(A)(8) provides, "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." *See Mueller v. All-Temp Refrig., Inc.*, 3d Dist. Van Wert No. 15-13-08, 2014-Ohio-2718, ¶ 33. When a transaction involves only the sale of goods, as defined in R.C. 1302.01(A)(8), a court can conclude, without further inquiry, that the case is governed by the UCC. *See Tubelite Co.* at ¶ 12 (concluding that the UCC governed a transaction for the sale of "signage materials"); *Shelly Materials, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Portage No. 2013-P-0016, 2013-Ohio-5654, ¶ 36 (concluding that the UCC governed a transaction for the sale of "ready-mix concrete").

{¶34} Sometimes, however, contracts involve the transaction of goods *and* services. In that scenario, the "predominant factor" test is used to determine whether R.C. Chapter 1302 is applicable. *Mueller v. All-Temp Refrig., Inc.*, 3d Dist. Van Wert No. 15-13-08, 2014-Ohio-2718, ¶ 34, citing *Urban Industries of Ohio, Inc. v. Tectum, Inc.*, 81 Ohio App.3d 768, 773-774 (3d Dist.1992). Under the predominant-factor test, "[T]he test for the inclusion in or the exclusion from

sales provisions is whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved." *Id.*, citing *Allied Indus. Serv. Corp. v. Kasle Iron & Metals, Inc.*, 62 Ohio App.2d 144, 147 (6th Dist.1977). "Put more simply, the question is whether 'the purchaser's ultimate goal is to acquire a product or procure a service.'" *Id.*, quoting *Mecanique C.N.C., Inc. v. Durr Environmental, Inc.*, 304 F.Supp.2d 971, 977 (S.D.Ohio 2004).

{¶35} Normally, the "predominate purpose" of a contract involving the transaction of goods and services is a factual question for a jury. *Allied Erecting & Dismantling Co. v. Ohio Edison Co.*, 7th Dist. Mahoning No. 13 MA 40, 2015-Ohio-2328, ¶ 13, citing *RPC Elec., Inc. v. Wintronics, Inc.*, 8th Dist. Cuyahoga No. 97511, 2012-Ohio-1202, ¶ 16. *See also Mueller* at ¶ 35. "However, Ohio courts have held that an exception to this principle exists when there are no disputed facts as to the predominant purpose of the contract." *Allied Erecting & Dismantling Co.* at ¶ 16, citing *Valleaire Golf Club, Inc. v. Conrad*, 9th Dist. Medina No. 03CA0006-M, 2003-Ohio-6575, ¶ 7. "Where * * * there are no disputed facts that raise issues to be decided by the jury, it is proper for the trial court to rule as a matter of law on whether the contract is covered by [the UCC]." (Emphasis deleted.) *Valleaire Golf Club, Inc.* at ¶ 6, citing *Wooster Products, Inc. v. Magna-Tek, Inc.*, 9th Dist. Wayne No. 2462, 1990 WL 51973 (Apr. 25, 1990).

{¶36} In this case, notwithstanding the Agreement's references to "manure brokering services," the Agreement provides, "[LandTech] agrees to pay OFE for the transfer of manure ownership." (Joint Trial Ex. 1). In other words, LandTech, the purchaser, agreed to pay OFE, the seller, for manure. Manure is "movable at the time of identification to the contract for sale" and therefore a "good" under R.C. 1302.01(A)(8). The Agreement makes LandTech responsible for the removal of the manure; however, the purchaser, LandTech, bargained for no service to be provided by OFE under the Agreement. Indeed, LandTech requested, and was awarded by the jury, damages for lost profits, which were measured by LandTech's inability to acquire, then resell and spread manure. Accordingly, the Agreement is one purely for the sale of manure, a good.

{¶37} Even assuming the Agreement is for the sale of goods and services, the "question is whether 'the *purchaser's* ultimate goal is to acquire a product or procure a service.'" (Emphasis added.) *Mueller*, 2014-Ohio-2718, at ¶ 34, quoting *Mecanique C.N.C., Inc.*, 304 F.Supp.2d at 977. It appears that the trial court and LandTech confuse the seller and the purchaser under the Agreement. In fact, the trial court submitted the following interrogatory to the jury: "Do you find by the preponderance of the evidence that the primary purpose of the 2006 Contract was: * * * for manure brokering services? OR for the purchase of

manure?" (Interrogatory No. 10, Doc. No. 156). The jury checked the line next to "for manure brokering services." (*Id.*).

{¶38} The trial court should not have submitted this question to the jury because no disputed facts made this question one for the jury. Specifically, there were no disputed facts that raised an issue to be decided by the jury concerning the predominant purpose of the Agreement. That is, there is no dispute that LandTech, the purchaser, did *not* bargain for any service to be performed by OFE, the seller. Rather, LandTech bargained only for the purchase of manure from OFE. This is perhaps why LandTech spends only a few lines in its brief addressing this issue. (LandTech's Brief at 13). For the reasons above, we conclude that the Agreement is one for the sale of goods and governed by the UCC.

{¶39} "Unlike the common law, the Ohio Uniform Commercial Code does not require that all essential terms of a contract be definite in order for the contract to be enforceable." *Tubelite Co., Inc.,* 176 Ohio App.3d 241, 2008-Ohio-1905, at ¶ 20, citing 2 Anderson, *Uniform Commercial Code*, Section 2-204:210, at 477 (3d Ed.1997). "However, in the absence of some basic terms—such as the description and quantity of the goods—a contract may not exist." *Id.*, citing 1 Hawkland, *Uniform Commercial Code Series*, Section 2-204:3 (2001). "Quantity is generally the only term that is required for contract formation." *H & M Landscaping Co.,*

*Inc. v. Abraxus Salt, L.L.C.*, 8th Dist. Cuyahoga No. 94268, 2010-Ohio-4138, ¶ 12, citing Official Comment One to R.C. 1302.04 ("The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated. * * * Only three definite and invariable requirements as to the memorandum are made by this subsection. * * * [T]hird, it must specify a quantity."). "'[T]herefore, if a contract lacks a quantity term, it * * * runs afoul of the Statute of Frauds and is not enforceable.'"[1] *Id.*, quoting *Orchard Group, Inc. v. Konica Med. Corp.*, 135 F.3d 421, 428 (6th Cir.1998).

{¶40} The UCC allows parties to a contract, rather than specifying a quantity, to measure the quantity of goods by the good-faith output of the seller or the good-faith requirements of the buyer:

> A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

R.C. 1302.19(A). *See also NSK Industries, Inc. v. Bayloff Stamped Prods. Kinsman, Inc.*, 9th Dist. Summit No. 24777, 2010-Ohio-1171, ¶ 23. The Supreme

---

[1] "R.C. 1302.04, Ohio's codified statute of frauds, requires a written agreement if a contract for the sale of goods is for an amount greater than $500." *H & M Landscaping Co., Inc.* at ¶ 12, fn. 1.

Court of Ohio "defined a requirements contract as follows: A contract in writing whereby one agrees to buy, for sufficient consideration, all the merchandise of a designated type which the buyer may require for use in his own established business." (Emphasis deleted.) *Jackson Tube Serv., Inc. v. Camaco LLC*, 2d Dist. Miami Nos. 2012 CA 19 and 2012 CA 25, 2013-Ohio-2344, ¶ 12, citing *Fuchs v. United Motor Stage Co.*, 135 Ohio St. 509 (1939), paragraph two of the syllabus. *See also H & M Landscaping Co., Inc.* at ¶ 13, quoting *Black's Law Dictionary* (8th Ed.2004) and citing R.C. 1302.19(A). "A requirements contract has further been defined as a contract in writing where one party promises to buy exclusively, and the other party agrees to deliver specific goods or services which the buyer may need for a certain period of time." *Jackson Tube Serv., Inc.* at ¶ 13, citing *Bass, Hurwitz & Poliner, CPA's v. State*, 10th Dist. Franklin Nos. 88AP-1120 and 89AP-16, 1989 WL 87078 (Aug. 3, 1989). Ohio courts have held that, under Ohio's UCC, exclusivity is a necessary component of a requirements contract. *See H & M Landscaping Co., Inc.* at ¶ 17-18, citing *Orchard Group, Inc.* at 429; *Jackson Tube Serv., Inc.* at ¶ 17.

{¶41} LandTech advances two arguments as to why the Agreement is enforceable. First, it argues that the Agreement provides a sufficient quantity term—"all available tonnage per year of manure." (LandTech's Brief at 13-16).

Second, it argues alternatively that the Agreement is a requirements contract. (*Id.* at 16-18). We will address the arguments in reverse order.

**{¶42}** The Agreement is not a requirements contract for multiple reasons. As an initial matter, it appears that LandTech once again confuses the seller and the buyer under the Agreement. That is, under a *requirements* contract, the quantity term is measured by the good-faith requirements of the buyer. Here, if anything, the Agreement is for the sale of the output of manure—"all *available* tonnage per year of manure"—not the manure requirements of LandTech. In other words, the amount of manure "available" would be dictated by OFE, the seller, not by LandTech, the buyer. Therefore, if anything, the Agreement would be an output contract, not a requirements contract.

**{¶43}** At any rate, the Agreement is not an output or a requirements contract. First, and most significantly, to treat the Agreement as an output or a requirements contract would be to ignore the sentence of the Agreement following the "all available tonnage per year of manure" sentence. That sentence provides, "Specific quantity to be determined by and mutually agreeable [sic] both parties." (Joint Trial Ex. 1). The quantity term of an output or a requirements contract is not measured by a specific quantity mutually agreeable to the parties. Rather, as we explained above, the quantity under an output or a requirements contract is measured by the good-faith output of the seller or the good-faith requirements of

the buyer, respectively. Therefore, the plain language of Appendix B's "Quantity" paragraph indicates that the quantity measure was *not* to be supplied by either the good-faith output of the seller or the good-faith requirements of the buyer.

**{¶44}** Second, the Agreement lacks the exclusivity required under an output or a requirements contract. Nothing in the language of the Agreement suggests exclusivity. *See H & M Landscaping Co., Inc.*, 2010-Ohio-4138, at ¶ 17-18, citing *Orchard Group, Inc.*, 135 F.3d at 429 ("There is nothing in the language itself on its fac[e] which even remotely suggests exclusivity."); *Jackson Tube Serv., Inc.*, 2013-Ohio-2344, at ¶ 17. Under the language that the parties chose in the Agreement, nothing under the Agreement would, in the case of an output contract, preclude OFE from selling manure to another party or, in the case of a requirements contract, preclude LandTech from purchasing manure from another company. *See Jackson Tube Serv., Inc.* at ¶ 17 ("JTS was free to sell steel tubing products to any other buyer during the term of the * * * contracts. Conversely, Camaco was free to buy steel tubing products from any other seller during the term of either contract."); *Fuchs*, 135 Ohio St. 509, at paragraph two of the syllabus (stating that in a requirements contract, "one agrees to buy * * * *all* the merchandise of a designated type which the buyer may require for use in his own established business" (Emphasis added.)). Indeed, in the case of an output contract, the phrase "all available tonnage per year of manure" could mean "all

available tonnage per year of manure" after OFE sells manure to another party or parties, or after it uses some of the manure for its own purposes. Because nothing in the Agreement—including the phrase "all available tonnage per year of manure"—suggests, even impliedly, an exclusive relationship, parol evidence is inadmissible to allow post-litigation revision of the Agreement. *Orchard Group, Inc.* at 429-430 ("[P]arole [sic] evidence is only admissible when the contract language is itself ambiguous as to its terms. * * * Here, there is simply no ambiguity. The * * * letter is not unclear; it simply does not suggest, even impliedly, an exclusive relationship."), citing *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 794 (4th Cir.1989). Therefore, the Agreement lacks the exclusivity required to be an output or a requirements contract. For all of these reasons, the Agreement is not an output or a requirements contract.

{¶45} Alternatively, LandTech argues that the Agreement provides a sufficient quantity term—"all available tonnage per year of manure." As we discussed above, a quantity term is essential to a contract for the sale of goods under Ohio's UCC. LandTech's argument might be persuasive if not for the next sentence of the Agreement: "Specific quantity to be determined by and mutually agreeable [sic] both parties." (Joint Trial Ex. 1). Reading these sentences together, it is clear that the parties bargained to reserve quantity—an essential element of a contract for the sale of goods—for the future agreement of both

parties following future negotiations. Under the Agreement, each party reserves an unlimited right to agree to the specific quantity of manure. It follows that, if one of the parties refuses to agree to the specific quantity of manure, that party has no obligation to, in OFE's case, sell manure, or, in LandTech's case, purchase manure. *See Simon Property Group, L.P. v. Kill*, 3d Dist. Allen No. 1-09-30, 2010-Ohio-1492, ¶ 49 ("An agreement is illusory where 'by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory.'"), quoting *Imbrogno v. Mimrx.com, Inc.,* 10th Dist. Franklin No. 03AP-345, 2003-Ohio-6108, ¶ 8, citing *Century 21 v. McIntyre*, 68 Ohio App.2d 126 (1st Dist.1980). *See also Arrotin Plastic Materials of Indiana v. Wilmington Paper Corp.*, 865 N.E.2d 1039, 1042 (Ind.App.2007) (concluding that an agreement for the sale of goods was illusory and unenforceable due to an indefinite quantity term). In short, the "mutually agreeable [sic] both parties" clause in the Agreement allows each party to determine the nature and extent of its performance, leaving the Agreement without an enforceable quantity term.

**{¶46}** To argue that the parties agreed to a quantity term of "all available tonnage per year of manure" ignores a legally operative sentence of the Agreement. In other words, if the parties agreed to a quantity term of "all available tonnage per year of manure," as LandTech argues, then there would be

no need for future agreement concerning quantity. The parties would simply track the amount of manure exchanged, and LandTech would pay OFE accordingly, as is contemplated by the sentence in Appendix A, "Tonnage of the manure removed will be tracked and billed according to the quantities listed on the 'OFE – Manure Management Manifest.'" (Joint Trial Ex. 1). We refuse to disregard the sentence of the Agreement reserving an essential element of the contract for future agreement. *See Dubuc, Lucke & Co. v. Diflora*, 4th Dist. Washington No. 99CA01, 1999 WL 606779, *10 (Aug. 4, 1999) ("We cannot disregard the plain language of the contract and, in effect, 'create a new contract by finding an intent not expressed in the clear language employed by the parties.'"), quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978). Moreover, there is no evidence that the parties later agreed in writing to a quantity term. Indeed, LandTech's sole remaining count in the case is for breach of the Agreement, not a subsequent agreement to a quantity term.

{¶47} LandTech also argues that the Agreement is an enforceable agreement to make an agreement. It is true that, under Ohio law, an agreement to make an agreement is not per se unenforceable. *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 503 (1994). "'The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically

enforced.'" *Id.*, quoting *Normandy Place Assocs. v. Beyer*, 2 Ohio St.3d 102, 105-106 (1982). In this case, the Agreement is not an enforceable agreement to make an agreement.

{¶48} First, the plain language of the Agreement reflects that the parties did not intend to be bound by any purported quantity stated in the Agreement, including "all available tonnage per year of manure." That is, the existence of a "[s]pecific quantity" of manure is contingent on each party's future agreement to the quantity based on further negotiations. (Agreement, Appendix B ("Specific quantity to be determined by and *mutually agreeable* [sic] *both parties*." (Emphasis added.))). It is clear from the Agreement that each party retained discretion to refuse to agree to a specific quantity if the quantity was not agreeable to it. *See Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 615 (6th Cir.2001) ("[T]he contract makes it clear that Iams retained discretion to refuse to renew if the terms proposed were not 'mutually agreeable.'"); *M.J. DiCorpo, Inc.* at 503 ("[T]he express terms of the letter of intent clearly indicate that that document was nothing more than an agreement to principles which were subject to further negotiation and a detailed and definitive merger agreement. While the letter may have provided the basic framework for future negotiations, the letter itself did not address all the essential terms of the merger. Thus, the letter of intent is not a legally enforceable contract.").

{¶49} Second, even assuming the parties manifested an intention to be bound by the Agreement's terms, because a quantity term is essential to a contract for the sale of goods under the UCC, and because the parties reserved that term for agreement in the future following further negotiations, it is not reasonably possible to fill in the "quantity gap" in the Agreement. *See Oglebay Norton Co. v. Armco, Inc.*, 52 Ohio St.3d 232, 236-237 (1990) ("We have * * * held that '[i]f it is found that the parties intended to be bound, the court should not frustrate this intention, *if it is reasonably possible to fill in some gaps that the parties have left*, and reach a fair and just result.'" (Emphasis added.)), quoting *Litsinger Sign Co. v. American Sign Co.*, 11 Ohio St.2d 1, 14 (1967). An absent quantity term in a contract for the sale of goods is not a gap that can be filled under the UCC. *See Skinner v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 52788, 1987 WL 17901, *2 (Oct. 1, 1987), citing Official Comment One to R.C. 1302.04 and *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167 (8th Dist.1983). Accordingly, the parties' intentions are not sufficiently definite to be specifically enforced. *See Willoughby-Eastlake Pub. Library Bd. v. City of Willoughby Hills*, 11th Dist. Lake No. 93-L-172, 1994 WL 321199, *3 (June 30, 1994).

{¶50} Finally, while Official Comment One to R.C. 1302.04 points out that the quantity term "need not be accurately stated," it also provides that "recovery is limited to the amount stated." In other words, the quantity stated in the contract

need not be accurate—in the sense that the quantity stated in the contract is something other than the quantity actually exchanged; however, recovery is limited to a quantity *stated*. In this case, it is not that the Agreement's quantity term is not accurately stated. Rather, as we explained above, a quantity term is not stated at all and is instead reserved for future agreement of the parties.

**{¶51}** In sum, the Agreement's discussion of the quantity of manure leaves an essential term of the contract—quantity—dependent on future agreement, and the supposed quantity term is not sufficiently specific to be enforced as LandTech seeks. To hold otherwise would require us to rewrite R.C. 1302.04 or the Agreement. We are not allowed to do either. *See Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, ¶ 44 ("Our role is to interpret existing statutes, not rewrite them."); *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 362 (1997) ("It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result. A contract 'does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto.'"), quoting *Ohio Crane Co. v. Hicks*, 110 Ohio St. 168, 172 (1924). Although the Agreement is unenforceable, we point out that LandTech "could enforce [the Agreement] for the amount of [manure] that it had paid for, but no more." *H & M Landscaping Co., Inc.*, 2010-Ohio-4138, at ¶ 20.

{¶52} For all of the reasons above, viewing the evidence in a light most favorable to LandTech, reasonable minds can come to but one conclusion, that being in favor of OFE and Trillium.   The Agreement is unenforceable as a matter of law because it unambiguously lacks an essential quantity term.  There were no issues of fact to be determined by a trier of fact. *See Arrotin Plastic Materials of Indiana*, 865 N.E.2d at 1042.  Therefore, the trial court erred by denying OFE's and Trillium's motions for summary judgment and JNOV.

{¶53} OFE's and Trillium's first assignments of error are sustained.

**OFE's Assignment of Error No. II**

**The trial court erred in denying Ohio Fresh Eggs judgment as a matter of law or, alternatively, a new trial, because the agreement at issue unambiguously expired on June 30, 2011, which was prior to the 2013 events that were alleged to have breached that agreement.  (App. at B16)**

**OFE's Assignment of Error No. III**

**The trial court erred in denying Ohio Fresh Eggs judgment as a matter of law or, alternatively, a new trial, because by way of a novation expressed through writings and the conduct of all parties, LandTech and Ohio Fresh Eggs released one another from any obligations under their written agreement and substituted Trillium in place of Ohio Fresh Eggs.  (App. at B16)**

**OFE's Assignment of Error No. IV**

**The trial court erred in denying Ohio Fresh Eggs judgment as a matter of law or a new trial because plaintiff did not present any concrete, reliable, or accurate evidence of damages.  (App. at B16)**

**OFE's Assignment of Error No. V**

**The trial court abused its discretion by admitting damages calculations proffered by a lay witness that deviated substantially from acceptable practice, artificially inflated LandTech's damages claims, and were therefore unfairly prejudicial to Ohio Fresh Eggs. (Tr. Vol. V at 87)**

**OFE's Assignment of Error No. VI**

**The trial court erred in denying Ohio Fresh Eggs a new trial on damages because the jury's conclusion that LandTech mitigated its damages is against the manifest weight of the evidence. (App. at B16)**

**OFE's Assignment of Error No. VII**

**The trial court erred in denying Ohio Fresh Eggs a new trial, as required by Ohio Rule of Civil Procedure 49(B), when the jury returned inconsistent and irreconcilable answers to written interrogatories. (App. at B16)**

**Trillium's Assignment of Error No. II**

**The trial court erred in denying Trillium's JNOV motion, and the jury's verdict is against the manifest weight of the evidence, because Trillium was not a party to the contract and is not liable under the contract under any theory of successor liability. (See Order Denying JNOV at 2; Trial Transcript, Vol. VIII at 157-161; Jury Verdict Form And Interrogatories).**

**Trillium's Assignment of Error No. III**

**The trial court erred in denying Trillium's JNOV motion, and the jury's verdict is against the manifest weight of the evidence, because the 2006 Agreement terminated on June 30, 2011, two years prior to any alleged breach. (See Order Denying JNOV at 2; Trial Transcript, Vol. VIII at 157-161; Jury Verdict Form And Interrogatories).**

**Trillium's Assignment of Error No. IV**

**The trial court erred in denying Trillium's JNOV motion, and the jury's verdict is against the manifest weight of the evidence, because LandTech failed to establish its damages with reasonable certainty. (See Order Denying JNOV at 2; Trial Transcript, Vol. VIII at 157-161; Jury Verdict Form And Interrogatories).**

**Trillium's Assignment of Error No. V**

**The trial court erred in denying Trillium's JNOV motion, and the jury's verdict is against the manifest weight of the evidence, because LandTech failed to mitigate its damages. (See Order Denying JNOV at 2; Trial Transcript, Vol. VIII at 157-161; Jury Verdict Form And Interrogatories).**

**LandTech's Assignment of Error No. I**

**The Trial Court erred in denying Plaintiff's Post-trial Motions to certify the damages award as a total damages award of $5,169,963.00. Appendix A: R.190, Judgment Entry overruling LandTech's Motion for JNOV.**

**LandTech's Assignment of Error No. II**

**The Trial Court erred in denying Plaintiff's Post-trial Motions to certify the damages award as joint and several. Appendix A: Appendix A: [sic] R.190, Judgment Entry overruling LandTech's Motion for JNOV.**

{¶54} In OFE's and Trillium's remaining assignments of error, they challenge the jury's verdict on multiple grounds. In LandTech's assignments of error, it argues that the trial court erred by denying its motion to certify the damages award as a joint and several, total damages award.

{¶55} In light of our decision to sustain Trillium's and OFE's first assignments of error, Trillium's second, third, fourth, and fifth assignments of error, OFE's second, third, fourth, fifth, sixth, and seventh assignments of error, and LandTech's first and second assignments of error are moot, and we decline to address them. App.R. 12(A)(1)(c); *Mascarella v. Simon Property Group*, 7th Dist. Mahoning Nos. 06 MA 45 and 06 MA 62, 2007-Ohio-5351, ¶ 32.

{¶56} Having found error prejudicial to the appellants/cross-appellees herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS, P.J. and SHAW, J., concur.**

**/jlr**